UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| RYAN SULLIVAN, § | |
| § | |
| *Plaintiff*, § | |
| v. § | CIVIL ACTION G-06-680 |
| § | |
| JOSHUA ALLRED, *et al.*, § | |
| § | |
| *Defendants*. § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Ryan Sullivan filed this civil rights action pursuant to 42 U.S.C. § 1983 complaining of an unlawful arrest and the use of excessive force by defendants Joshua Allred, Rene Vela, and Robert Owens. Defendants filed a motion for summary judgment. Dkt . 28.

Based on the pleadings, the motion, response, and reply, the probative evidence, and the applicable law, the court finds that this motion should be GRANTED, and Sullivan's claims are DISMISSED.

**BACKGROUND**

On October 30, 2004, plaintiff Ryan Sullivan went to Buck's Bar in Galveston, Texas with several friends. Dkt. 34, Ex. A. at 71. Sullivan and his friends chose a table, and Sullivan sat down while his friends went out on the dance floor. *Id.* at 79. While Sullivan was sitting in the chair, another woman at the bar told him that he was sitting in her chair and asked him to get up. *Id.* at 84. When Sullivan would not get up, the woman left to seek intervention from a Galveston police officer who was providing security at the bar. Dkt. 28, Ex. C at 2. Officer Allred came over to Sullivan and asked him to get up from the chair. *Id.* When Sullivan did not get up, Officer Allred pulled him to a standing position and asked him to leave the bar. *Id.* Instead of leaving, Sullivan headed towards the dance floor to tell his friends he was leaving.

Dkt. 28, Ex. A at 92.  When Sullivan headed away from the door, Officer Allred grabbed Sullivan and tried to pull him towards the exit.  Dkt. 28, Ex. H at 2.  Sullivan broke away from Officer Allred, and according to Sullivan and his friends, Officer Allred initially grabbed Sullivan from behind in a choke hold which he then released.  *Id.*  Officer Allred then restrained Sullivan from behind with both arms wrapped around Sullivan's torso.  Dkt. 28, Ex. A at 94.  Officer Allred was steering Sullivan to the exit.  *Id.*  Multiple witnesses state that when Sullivan was near the exit, he spun around, grabbed Officer Allred's neck with both hands, and lifted him high enough for one foot to leave the floor.  Dkt. 28, Ex. B at 1.

While Sullivan and Officer Allred were struggling, Officer Vela came to assist Officer Allred.  Dkt. 28, Ex. C at 3.  Officer Vela wrapped his arms around Sullivan, who continued to struggle.  *Id.*  As a result of the struggle, Sullivan and Officer Vela fell to the ground.  *Id.*  By all accounts, the confrontation had now escalated to a serious physical struggle with arms and legs flailing wildly.  *Id.*  At this point Officer Owens arrived on the scene.  *Id.*  At about the same time, Sullivan was able to get up on his hands and knees.  *Id.*  He extended his legs and either kicked or inadvertently tripped Officer Owens, who joined the other two officers and Sullivan on the floor.  *Id.*  Officer Allred then tried to handcuff Sullivan.  *Id.*  Officer Owens used his ASP baton to strike Sullivan's lower body.  Dkt. 28, Ex. A at 99.  Sullivan was eventually handcuffed and led out of the bar.  *Id.* at 100.  After he was handcuffed, no officer used any force against him.  *Id.* at 102.  He was moved outside where he fell onto the ground.  *Id.* at 103.  He was picked up by his handcuffs, which he claims was painful, and moved into a police car and taken to jail.  *Id.* at 108.

Sullivan alleges that he did not know that Allred, Vela, and Owens were police officers until after he was handcuffed.  *Id.* at 101.  Although all of the officers were uniformed, Sullivan

claims the he did not know they were police officers because many bar patrons were wearing costumes since it was the night before Halloween. Dkt. 28, Ex. H at 2.

## STANDARD OF REVIEW

### A. Summary Judgment Standard

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Christopher Village, L.P. v. Retsinas*, 190 F.3d 310, 314 (5th Cir. 1999). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. There must be an absence of any genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S. Ct. 2505 (1986). An issue is "material" if its resolution could affect the outcome of the action. *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). "[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is no genuine issue material fact. *Id.* at 322. If the moving party fails to meet this burden, then they are not entitled to a summary judgment and no defense to the motion is required. *Id.*

"For any matter on which the non-movant would bear the burden of proof at trial . . . the movant may merely point to the absence of evidence and thereby shift to the non-movant the

burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718-19 (5th Cir. 1995); *see also Celotex*, 477 U.S. at 323-25.  To prevent summary judgment, "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986) (quoting FED. R. CIV. P. 56(e)).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in favor of the non-movant.  *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 163-64 (5th Cir. 2006).  The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence, disregard any evidence favorable to the moving party that the jury is not required to believe, and give credence to the evidence favoring the nonmoving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached.  *Jones v. Robinson Property Group, L.P.*, 427 F.3d 987, 993 (5th Cir. 2005).  However, the non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  By the same token, the moving party will not meet its burden of proof based on conclusory "bald assertions of ultimate facts." *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978); *see also Galindo v. Precision Amer. Corp.*, 754 F.2d 1212, 1221 (5th Cir. 1985).

### B. Qualified Immunity Standard

Government officials, including all of the defendants, are entitled to immunity from civil damages unless their conduct violates a clearly established statutory or constitutional right of which a reasonable person would have known. *See Anderson v. Creighton*, 483 U.S. 635, 639, 107 S. Ct. 3034, 3038 (1987). The threshold issue in a qualified immunity analysis is whether an official's conduct violated a constitutional right, based upon the facts alleged and taken in the light most favorable to the party asserting the injury. *See Saucier v. Katz*, 553 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001). If no constitutional right was violated, the court need inquire no further. *Id.* If, however, a constitutional violation occurred, the second inquiry is whether the official could nevertheless have reasonably but mistakenly believed that his or her conduct did not violate a clearly established constitutional right. *Id.* at 206.

## ANALYSIS

### A. Excessive Force

In order to make a claim for excessive force pursuant to § 1983 and the Fourth Amendment, a plaintiff must show: "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005) (citing *Harper v. Harris County*, 21 F.3d 597, 600 (5th Cir. 1994)). While significant injury is not required, the injury must be more that *de minimus*. *See id.* To determine the reasonableness of a defendant's actions, the court pays "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to

evade arrest by flight." *Id.* at 753 (citing *Gutierrez v. City of San Antonio*, 139 F.3d 441, 447 (5th Cir. 1998)).

While the photos submitted by Sullivan show that he was injured the night of his arrest, the evidence shows that the force used by the officers was not "clearly excessive" under the circumstances. In support of his excessive force claims, Sullivan's Response states that "Ryan Sullivan was face down on the floor, hands and arms pinned underneath him with three officers weighing more than 750 pounds on top of him choking, punching and beating him." While this hyperbole could support a finding of excessive force, it is unsupported by the evidence.

The affidavit and trial testimony submitted by both sides reveal that Sullivan and the three officers were involved in a scuffle on the floor. Sullivan's own testimony is consistent with this since he claims that he thought the people trying to arrest him were bar patrons dressed up as police officers. A natural human reaction would be to fight back against anyone wrongfully attempting physical restraint. Given that Sullivan was involved in physical struggle with the officers, it was reasonable for the officers to use some force to subdue Sullivan enough to handcuff him. The testimony indicates that the force used consisted of several blows from Officer Owens's ASP baton to the lower body. The testimony also confirms that after Sullivan was handcuffed, the physical contact immediately stopped. The court finds that the force used was necessary to subdue Sullivan and was not excessive under the circumstances. This finding is supported by the photos submitted by Sullivan which show abrasions on his back and neck, a bruise on his leg, and a swollen abrasion on his forehead. These injuries, while somewhat more than *de minimus,* are entirely consistent with a struggle on the floor followed by several strikes from the officer's baton. They are inconsistent with a serious beating involving punching and choking and are not the result of excessive force. Since the force used was reasonable, Sullivan

suffered no constitutional violation. Accordingly, Sullivan's claim that the officers used excessive force are DISMISSED.

### B. Unlawful Arrest

In order to make a claim for unlawful arrest pursuant to § 1983 and the Fourth Amendment, a plaintiff must allege facts showing that the arresting officer lacked probable cause for the arrest. Government officials are protected from charges of wrongful arrest where a reasonable official would believe probable cause existed. *See Brown v. Lyford*, 243 F.3d 185 (5th Cir. 2001) (citing *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000)). An officer other than the arresting officer can be liable for an unlawful arrest only if he: "(1) knows that a fellow officer is violating an individual's constitutional right; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Randall v. Prince George's Cty.*, 302 F.3d 188, 204 (4th Cir. 2002); *see also Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995).

In this case, Officer Allred had probable cause to believe that Sullivan had committed a crime in his presence. Specifically, it was reasonable for Officer Allred to believe that Sullivan had committed assault and resisted arrest. *See* TEX. PENAL CODE §§ 22.01, 38.04. Several eyewitness accounts confirm that Sullivan had his hands around Officer Allred's neck, and that Sullivan was engaged in a struggle on the floor with one or more of the officers. These facts alone are enough to provide Officer Allred with probable cause for the arrest.

In response, Sullivan argues that he was committing no crime by allegedly sitting in someone else's seat, so his arrest was without probable cause. This argument is unpersuasive since Sullivan was not arrested for sitting in someone else's seat. While an arrest based on that behavior may have been improper, by the time Sullivan was actually arrested, the confrontation had escalated substantially. It was the escalation that led to Sullivan's eventual arrest.

It is also irrelevant that Sullivan thought he was being confronted by people in police officer costumes. Sullivan's impressions have no bearing on the police officers' evaluation of Sullivan's actual actions. The only relevant analysis is whether the arresting officer had probable cause to believe that a crime had been committed. *See Henry v. U.S.*, 361 U.S. 98, 102, 80 S. Ct. 168 (1959). In this case, the evidence confirms that there was probable cause. Officer Allred appropriately arrested Sullivan, and Sullivan did not suffer a constitutional violation. Since Sullivan's arrest was appropriate under the circumstances, Officers Vela and Owens did not commit any violation by failing to stop the arrest. Sullivan's claims for wrongful arrest are DISMISSED.

## CONCLUSION

Defendants are entitled to qualified immunity, and all claims against defendants are DISMISSED. Defendants' Motion for Summary Judgment (Dkt. 28) is GRANTED. A Final Judgment will be entered contemporaneously with this Order.

Signed at Houston, Texas on January 15, 2008.

_____
Gray H. Miller
United States District Judge